UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE MARIE S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-1170-ACL |
| | ) | |
| LELAND DUDEK, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Darlene S. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of her application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because she

could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

---

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial
Conference of the United States issued a memorandum recommending that courts adopt a local
practice of using only the first name and last initial of any non-government party in Social
Security opinions.

[2]Leland Dudek is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit.
No further action need be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

consent of the parties, pursuant to 28 U.S.C. § 636(c).    A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I.   Procedural History

Plaintiff filed her applications for benefits on February 5, 2019.   (Tr. 142-47.)   She claimed she became unable to work on November 1, 2013,[3] due to post-traumatic stress disorder ("PTSD"), anxiety, depression, degenerative disc disease of the lower back, arthritis, mild asthma, back pain, and muscle spasms.   (Tr. 165.)   Plaintiff was 38 years of age at the time she filed her application.   (Tr. 840.)   Her application was denied initially.   (Tr.  92-96.)   On March 17, 2021, after a hearing, an ALJ found that Plaintiff was not disabled.   (Tr. 13-29.)   The Appeals Council denied Plaintiff's claim for review.   (Tr. 1-5.)   Plaintiff appealed the ALJ's decision to this Court, and on July 8, 2022, her claim was remanded at the Commissioner's request for further proceedings and a new decision.   (Tr. 925-28.)

On March 23, 2023, after a second hearing, the ALJ found that Plaintiff was not disabled. (Tr. 841-42.)   The Appeals Council denied Plaintiff's request for review.   (Tr. 812-17.)   Thus, the March 23, 2023 decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ erred in failing "to resolve an apparent conflict between the VE's testimony and the DOT, leaving her conclusion at step five unsupported."   (Doc. 12 at 6.)    She next argues that the ALJ "failed to provide any explanation for rejecting moderate limitations from Dr. Spencer's and LPC Davis's opinions after finding

---

[3]She subsequently amended her alleged onset of disability date to January 14, 2019.   (Tr. 825.)

them generally persuasive."  *Id.* at 11.

## II.  The ALJ's Determination

The ALJ first found that Plaintiff has not engaged in substantial gainful activity since her January 14, 2019 application date.   (Tr. 827.)   Next, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, cervical spondylosis, arthralgias, major depressive disorder, anxiety, social anxiety disorder, and PTSD. *Id.*   The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 828.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.   She should avoid concentrated exposure to vibration and workplace hazards including unprotected heights, moving mechanical parts, and operating motor vehicles.   She can understand, remember, and carry out simple instructions, and make simple work-related decisions.   She can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, teamwork in completing job tasks, or contact with the public. She can tolerate occasional changes in a routine work setting and occasional contact with supervisors and co-workers.

(Tr. 831.)

The ALJ found that Plaintiff had no past relevant work, but there was work existing in significant numbers in the national economy that Plaintiff could perform, such as router, marker, and collator operator.   (Tr. 840-41.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income
> protectively filed on January 14, 2019, the claimant is not disabled
> under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 842.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and

non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next,

the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

As noted above, Plaintiff challenges the ALJ's step five determination and mental RFC assessment. The undersigned will discuss these claims in turn.

### 1.   Step Five Determination

Plaintiff first argues that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Plaintiff contends that the ALJ's step five determination is, therefore, unsupported by substantial evidence.

At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial

testimony in agency proceedings." *Id.* "They must have 'expertise' and 'current knowledge' of '[w]orking conditions and physical demands of various' jobs; '[k]nowledge of the existence and numbers of [those jobs] in the national economy'; and '[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs.'" *Id.* (quoting SSA, Hearings, Appeals, and Litigation Law Manual I-2-5-50 (Aug. 29, 2014)). "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.* "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2).

It is well-established in the Eighth Circuit that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Williams v. Saul*, 2020 WL 5569992, at *5 (E.D. Mo. Sept. 17, 2020) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005)). However, there are some limitations on the ALJ's ability to rely on vocational expert testimony. For example, "when a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence." *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (internal quotation marks omitted); *see also Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) ("Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.") (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).

Additionally, Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT.   SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).   The ALJ must ask the vocational expert ("VE") if there is a conflict.   *Id.*   If there is an apparent conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE...evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2-*3.   The ALJ must also explain in her decision how she resolved the conflict.   *Id.* at *3.   Accordingly, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997)).

Here, at the administrative hearing, the ALJ asked the VE to assume a hypothetical individual with the following relevant mental[4] limitations:

> The individual can understand, remember, and carry out simple instructions, make simple, work-related decisions.   The individual can tolerate a low level of work pressure which is defined as work not requiring multitasking, detailed job tasks, significant independent judgments, a production rate pace, teamwork in completing job tasks, or contact with the public.

(Tr. 874.)   The VE testified that an individual of Plaintiff's age and with her education, work experience, and the mental limitations set out above would be capable of performing jobs existing in the national economy.   *Id.*   Specifically, the VE identified the following jobs: router,

_____

[4]Although Plaintiff also alleged disabling physical impairments, she does not challenge the ALJ's findings with regard to her physical impairments.

marker, and collator operator.   (Tr. 874-75.)   He indicated that all three positions have an SVP[5] of 2.   *Id.*

The ALJ then questioned the VE, "[i]s your testimony consistent with the [DOT]?"   (Tr. 875.)   The VE responded:

> Yes, Your Honor, with the exception of those areas that are not specifically addressed by the DOT or the SCO and that would be the…low work pressure positions, interaction with supervisors, coworkers, and the general public, changes within the work setting, off-task behavior, and absences.   All of that information is based upon my education and experience as a vocational counselor and the information regarding off task is also in line with the DOL productivity and time use surveys.

*Id.*

In her decision at step five, the ALJ recounted the testimony of the VE that was not addressed by the DOT and the VE's explanation that the testimony was based on his education and experience.   (Tr. 841.)   The ALJ found that this was "an adequate basis for such testimony."   *Id.*   She concluded that, based on the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing work existing in significant numbers in the national economy.   *Id.*

Plaintiff contends that the ALJ failed to address an apparent conflict between the VE testimony and the DOT.   Specifically, she notes that the three jobs identified by the VE have a reasoning level of two, which requires a worker to apply "commonsense understanding to carry

---

[5]"SVP" refers to Specific Vocational Preparation, defined in Appendix C of the *Dictionary of Occupational Titles* (DOT) as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   A position with an SVP of 1 requires a short demonstration only while an SVP of 2 requires vocational preparation of no more than one month. The SVP does not address the abilities to interact with others and adapt to the work environment.

out *detailed* but uninvolved written or oral instructions."   *See* Router, DICOT 222.587-038, 1991 WL 672123; Marker, DICOT 209.587-034, 1991 WL 671802; Collator Operator, DICOT 208.685-010, 1991 WL 671753 (emphasis added).   Plaintiff contends that this requirement conflicts with the ALJ's RFC finding that Plaintiff was limited to "work *not requiring…detailed* job tasks."   (Tr. 831) (emphasis added).

Plaintiff relies upon *Stanton v. Comm'r Soc. Sec. Admin*, 899 F.3d 555 (8th Cir. 2018), in support of her argument that the ALJ's failure to resolve the alleged conflict requires reversal. In *Stanton*, the ALJ's hypothetical and RFC determination limited the plaintiff to "one-to-two step tasks," which corresponded directly to the language used in the DOT to describe level one reasoning, yet the job identified by the VE required level two reasoning.   *Id.* at 558-59.   The Eighth Circuit held that the ALJ's failure to address this inconsistency required reversal.   *Id.* at 560.

Here, unlike in *Stanton*, the ALJ's hypothetical and RFC determination did not limit Plaintiff to job tasks requiring one or two-step instructions.   The ALJ also did not otherwise find that Plaintiff could perform only jobs consistent with level one reasoning.

The Court instead finds Plaintiff's arguments more akin to those previously rejected by the Eighth Circuit.   *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (finding hypothetical stating that claimant was capable of "carrying out simple job instructions" and performing "simple, routine and repetitive work activity at the unskilled task level" was not inconsistent with the VE's opinion that the claimant could perform jobs with a reasoning level of two); *Filbert v. Colvin*, No. 4:14-cv-00209-JAR, 2015 WL 1474873, at *11 (E.D. Mo. Mar. 31, 2015) ("The law in this Circuit is clear—any potential inconsistency between a reasoning level of three and the ability to follow only simple instructions on non-detailed tasks is not a

conflict"); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (citing *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366-67 (8th Cir. 2007) (expert's opinion that a claimant who was limited to following "simple, concrete instructions" could work as a cashier was not inconsistent with the DOT's description of cashier as requiring level three reasoning)).

In *Moore*, the Eighth Circuit found that there was "no direct conflict between 'carrying out simple job instructions for simple, routine and repetitive work activity,' as in the hypothetical, and the [VE's] identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." 623 F.3d at 604. As distinguished by *Stanton*, "*Moore* emphasized that the ALJ decision at issue did not limit job instructions 'to simple one-or-two-step instructions or otherwise indicate that the claimant could perform only occupations at a DOT reasoning level of one.'" *Stanton*, 899 F.3d at 559 (quoting *Moore*, 623 F.3d at 604 (cleaned up)).

Thus, in accordance with Eighth Circuit precedent that an ability to follow simple instructions and perform non-detailed tasks is not inconsistent with level two reasoning, the Court finds Plaintiff's argument regarding the perceived conflict unavailing. *Alie v. Berryhill*, 4:16CV1353 JMB, 2017 WL 2572287, at *13 (E.D. Mo. June 14, 2017); *see also Moore*, 623 F.3d at 605 ("Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony."); *Renfrow*, 496 F.3d at 921 (finding the ALJ's error in failing to ask the VE about possible conflicts between his testimony and the DOT harmless, since no such conflict appeared to exist).

## 2. Mental RFC Determination

Plaintiff next argues that the ALJ erred in evaluating the medical opinion evidence when determining her mental RFC.   Specifically, she argues that the ALJ "failed to provide any explanation for rejecting moderate limitations from Dr. Spencer's and LPC Davis's opinions after finding them generally persuasive."   *Id.* at 11.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.   *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).   The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).   Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.   *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).   The claimant has the burden to establish RFC.   *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).   The RFC need only include the limitations supported by the record.   *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).   The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports."   *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).   However, the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority."   *Mabry*, 815 F.3d at 391 (citation omitted).

The ALJ assessed the following mental RFC:

> She can understand, remember, and carry out simple instructions, and make simple work-related decisions.   She can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, teamwork in completing job tasks, or contact with the public.   She can tolerate occasional changes in a routine work setting and occasional contact with supervisors and co-workers.

(Tr. 831.)

Plaintiff argues that the ALJ failed to incorporate limitations found by consulting psychologist Thomas Spencer, Psy.D., or treating counselor Kathleen Davis, M.A., L.P.C.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.   This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.   20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be."   *Id.*   An ALJ may, but is not required to, explain how he or she considered the remaining factors.   *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations

eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted).   An ALJ must articulate how persuasive she found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

### a.  Dr. Spencer

Plaintiff saw Dr. Spencer on March 3, 2022, for a psychological evaluation at the request of the state agency.   (Tr. 1246-48.)   Plaintiff complained of "severe PTSD," stemming from abuse as a child and domestic violence as an adult.   (Tr. 1246.)   She reported continuous anxiety, and depression that waxes and wanes.   (Tr. 1247.)   Plaintiff reported a history of suicidal ideation but denied current thoughts.   *Id.*   She was hospitalized with thoughts of suicide on one occasion, in December of 2018.   *Id.*   Plaintiff lived with her husband and twelve-year-old stepson and has her four-year-old son every other weekend.   *Id.*   On a typical day, she ensures her stepson is up for school, drives him to school, comes back home to clean, and maintains her activities of daily living.   (Tr. 1248.)

On examination, Dr. Spencer noted impairment in grooming or hygiene; Plaintiff's eye contact was fair; she was cooperative and seemed to be a reliable historian; and her insight and judgment appeared mostly intact.   *Id.*   Plaintiff presented as "mildly anxious;" she denied thoughts of suicide; was alert and oriented in all spheres; she denied hallucinations; she was not paranoid; and her flow of thought was intact.   *Id.*   Dr. Spencer found Plaintiff to be of average intelligence; she identified two of three proverbs, and two of three similarities, and demonstrated a "decent" working knowledge of social norms.   *Id.*   She recalled two of three objects after five

minutes of distraction, and there was no impairment in long-term memory; she completed serial 3s with no errors and spelled the word "world" forward and backward; managed six digits forward and four backwards; did not know the capital of Italy; and completed simple arithmetic. *Id.*

Dr. Spencer diagnosed Plaintiff with major depressive disorder, recurrent, moderate; and PTSD. *Id.* He expressed the opinion that Plaintiff "demonstrates moderate impairment in her ability to learn, recall, and use information and to consistently stay on task." *Id.* He further found that Plaintiff demonstrated moderate impairment in her ability to relate to and work with others on a consistent basis. *Id.* She was capable of managing her benefits without assistance. *Id.*

The ALJ indicated that she found Dr. Spencer's opinions regarding Plaintiff's limitations "generally persuasive." (Tr. 840.) She pointed to Dr. Spencer's examination findings that Plaintiff presented as mildly anxious and had some difficulties identifying proverbs and recalling objects after a delay. *Id.* The ALJ further stated that Dr. Spencer's opinion regarding Plaintiff's limitations was "generally consistent with the record, which shows that the claimant has moderate mental limitations, as discussed in detail above." *Id.*

Plaintiff argues that the ALJ erred in finding Dr. Spencer's opinions "generally persuasive," yet not including a limitation in Plaintiff's ability to stay on task in her RFC despite Dr. Spencer's finding that Plaintiff demonstrated "moderate impairment" in her ability to "consistently stay on task." Plaintiff contends that the ALJ should have either explained her reasons for discounting the opined limitation or included them in the RFC assessment.

Defendant responds that Plaintiff's argument ignores that the RFC limited Plaintiff to carrying out only simple instructions, with no multitasking, no jobs involving detailed job tasks

or significant independent judgment, and no production rate pace.   Defendant contends that these limitations sufficiently account for Plaintiff's difficulty in staying on task.   Defendant further argues that the ALJ was not required to adopt Dr. Spencer's opinion verbatim.   The undersigned agrees.

Prior to evaluating Dr. Spencer's opinion, the ALJ performed an extensive review of relevant evidence in a detailed eight-page summary of the record before concluding Plaintiff was capable of performing a very limited range of light work.   (Tr. 832-40).   The ALJ cited the following specific medical evidence in support of her evaluation of Dr. Spencer's opinion:

- Plaintiff reported she was "doing well on medication," at a February 2019 follow-up with Joshua Wolfe, M.D. at Missouri Ozarks Community Health.   (Tr. 481.)

- Plaintiff underwent a psychological evaluation with Erin N. Maclin, Psy.D., on July 22, 2019.   (Tr. 538-42.)   Dr. Maclin found that Plaintiff had moderate limitations in her functional capacity due to symptoms of social anxiety and depression, but she retained the ability for "sustained concentration and persistence in simple and repetitive tasks."   (Tr. 541.)   Dr. Maclin expressed the opinion that Plaintiff was capable of "retaining information and effectively carrying out instructions that are multi-step and moderate."   *Id.*   She further found that Plaintiff reported mild difficulties with concentrating and maintained the ability to "reason and make work related decisions, but may require assistance."   (Tr. 541-42.)

- Consultative examiner John Demorlis, M.D., found that Plaintiff was able to remember three out of three objects after 10 to 15 minutes during a July 2019 examination.   (Tr. 550.)

- In July of 2020, Plaintiff reported only "mild" mental symptoms to an examining nurse practitioner at Missouri Ozarks Community Health and was found to have "well controlled" depression.   (Tr. 603.)

The ALJ specifically stated that she was limiting Plaintiff to understanding, remembering, and carrying out simple instructions, and making simple work-related decisions, which "corresponds to moderate limitations in…concentrating, persisting, or maintaining pace." (Tr. 834.)   She indicated that, although Dr. Maclin's opinion suggested Plaintiff was capable of performing either skilled or semi-skilled work, "the record supports greater limitations than this, and so I have limited the claimant to unskilled work, as noted above."   *Id.*

The undersigned finds that the ALJ's analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations.   The ALJ adequately evaluated the persuasiveness of Dr. Spencer's opinion by discussing the supportability and consistency of the evidence.

The ALJ found Dr. Spencer's RFC assessment persuasive and adopted his moderate limitations.   The ALJ assessed objective medical evidence, carefully described various objective findings, and cited numerous sources of medical evidence from many treatment notes.   The ALJ adequately incorporated Dr. Spencer's finding that Plaintiff is moderately limited in her ability to stay on task when limiting her to understanding, remembering, and carrying out only simple instructions; no multitasking or jobs involving detailed job tasks; no jobs requiring significant independent judgment; and no production rate pace.

The ALJ was not required to do more, as "the regulation does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion

simply because she finds it persuasive." *McClure v. Saul*, Case No.1:20CV150 SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021); *Koss v. Kijakazi*, Case No. 4:20CV996 RLW, 2022 WL 715009, at *10 (E.D. Mo. Mar. 10, 2022) (same); *see Moore v. Commissioner*, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021)) ("the fact that the ALJ found the opinion persuasive does not obligate the ALJ to incorporate every limitation suggested by the report, nor do the regulations require the ALJ to expressly address the persuasiveness of every opinion within every report.") (citing 20 C.F.R. § 404.1520c).   She was not required to adopt Dr. Spencer's conclusions verbatim, as "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (applying the revised medical-opinion regulations and holding that "the ALJ is free to accept some, but not all, of a medical opinion").

Instead, the ALJ translated the limitations suggested by Dr. Spencer and the other credible evidence of record into work-related restrictions, consistent with her duty to formulate the RFC.   To the extent such an approach could even be considered a deficiency in opinion writing, it is not a sufficient reason to set aside an ALJ's finding.   *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021).

### b. **Ms. Davis**

On October 20, 2020, licensed professional counselor Ms. Davis completed a Medical Source Statement-Mental.   (Tr. 773-75.)   Ms. Davis listed Plaintiff's diagnosis as PTSD.   (Tr. 773.)   She indicated that Plaintiff would miss approximately four days of work a month due to having "bad days" and would be off-task due to her symptoms in a way that would interfere with attention needed to perform even simple tasks 25 percent of the time.   *Id.*   Ms. Davis expressed the opinion that Plaintiff was moderately limited in every area of understanding, memory, sustained concentration, sustained persistence, and adaption.   (Tr. 773-74.)   As to Plaintiff's

ability to interact socially, Ms. Davis found that Plaintiff was only mildly limited in her ability to get along with co-workers or peers without distracting them or exhibiting behvaioral extremes and in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; but was moderately limited in the ability to interact appropriately with the general public, ask simple questions or requires assistance, and accept instructions and respond appropriately to criticism from supervisors.   (Tr. 774.)

The ALJ found that the moderate limitations indicated by Ms. Davis were "generally persuasive," but her opinions regarding Plaintiff's time off-task and absenteeism were "not persuasive."   (Tr. 840.)   She explained that the opinion was internally inconsistent, as Ms. Davis has opined that Plaintiff would be off-task 25 percent or more of the day, but that she only has a moderate limitation in her ability to complete a normal workday without interruption.   *Id.* Additionally, the ALJ stated that Ms. Davis' examinations do not provide support for the limitations in her opinion, as Ms. Davis consistently noted fairly normal findings on examination, showing Plaintiff was alert and oriented, her affect was appropriate, she was interactive, her functional status was intact, and she had no safety issues.   (Tr. 840, 727, 730, 738, 743, 1230, 1232, 1235, 1236, 1238, 1242, 1243, 1245, 1345, 1347.)   The ALJ found the moderate limitations expressed by Ms. Davis were generally consistent with the record, yet the records do not show Plaintiff would be absent or off-task to such a degree.   (Tr. 840.)

Plaintiff does not challenge the ALJ's findings discounting Ms. Davis' opinion regarding Plaintiff's time off-task and absenteeism.   Instead, Plaintiff again argues that the ALJ erred in failing to account for all of the opined moderate limitations without explanation, despite indicating this opinion was "generally persuasive."   Specifically, Plaintiff notes that Ms. Davis found that Plaintiff had moderate limitations in the "ability to make simple work related

decisions" and the "ability to accept instructions and respond appropriately to criticism from supervisors." (Doc. 12 at 13; Tr. 774.) Plaintiff points out that a moderate limitation was defined by Ms. Davis' Medical Source Statement form as "1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 773.) Plaintiff contends that the ALJ's failure to account for these limitations in her RFC assessment without explanation was reversible error.

Defendant responds that the ALJ adequately incorporated the moderate limitations found by Ms. Davis in limiting Plaintiff to jobs involving only simple instructions and only occasional contact with supervisors. Defendant argues that, to the extent Plaintiff argues additional limitations should have been included, the ALJ explained that greater limitations were not warranted and this decision is supported by substantial evidence. The undersigned agrees.

As discussed above with regard to Dr. Spencer, the fact that the ALJ found Ms. Davis' opinion that Plaintiff had moderate limitations "generally persuasive," did not obligate the ALJ to incorporate each one of these limitations verbatim. *See McClure*, 2021 WL 3856577, at *7. The ALJ properly evaluated the persuasiveness of Ms. Davis' opinion by discussing the supportability and consistency of the evidence.

The ALJ then incorporated those limitations which were consistent with the record evidence as a whole when fashioning Plaintiff's RFC. Notably, other medical sources identified limitations consistent with or less than those found by the ALJ. For example, consultative psychologist Dr. Maclin expressed the opinion that Plaintiff retained the capacity for "sustained concentration and persistence in simple and repetitive tasks," and was capable of "retaining information and effectively carrying out instructions that are multi-step and moderate." (Tr. 541.) Additionally, state agency psychological consultants Marsha Toll, Psy.D., and Linda Skolnick, Psy.D., found Plaintiff could understand and remember simple instructions, carry out

simple work instructions, maintain adequate attendance, sustain an ordinary routine without special supervision, interact adequately with peers and supervisors in an environment with limited contact with the general public, and adapt to most usual changes common to a competitive work setting.   (Tr. 839, 918, 938-39.)   The ALJ considered these opinions along with those of Dr. Spencer and Ms. Davis and formulated a mental RFC not identical to any of the opinions.   That is precisely the role of the ALJ.

The new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).   Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority."   *Mabry*, 815 F.3d at 391.   Although Plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not this Court's role to reweigh the medical evidence of Plaintiff's limitations considered by the ALJ in her determination of Plaintiff's RFC.   *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

The Court finds that the ALJ did not substantially err in her assessment of Ms. Davis' opinion, and further finds that the ALJ's mental RFC determination is supported by substantial evidence on the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of February, 2025.